<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| AIDONG CHEN,<br><br>　　　　　　*Plaintiff*,<br><br>　　v.<br><br>KPMG, LLP, et al.,<br><br>　　　　　　*Defendants.* | Civil Action No. 18-12650<br><br>OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court by way of Defendant KPMG LLP's ("KPMG" or "Defendant") Motion for Summary Judgment. ECF No. 69. <u>Pro se</u> Plaintiff Aidong Chen ("Chen" or "Plaintiff") opposes the Motion. ECF No. 79.[1] For the reasons explained below, Defendant's Motion for Summary Judgment is **GRANTED**.

**I.     BACKGROUND**[2]

This action arises from alleged incidents of discrimination and retaliation based on Plaintiff's race or national origin while he was Defendant's employee. <u>See generally</u> Compl., ECF No. 1.

---

[1] Plaintiff's opposition brief does not have page numbering, so the Court refers to the page numbering on the electronic PDF filing. <u>See generally</u> Pl. Br., ECF No. 79.

[2] Plaintiff did not file an itemized response to the Defendant's Statement of Material Facts ("SOMF"), ECF No. 69.2, as required by Local Rule 56.1. <u>See, e.g.</u>, <u>Glazewski v. Corzine</u>, No. 06-4107, 2009 WL 5220168, at *1 (D.N.J. Dec. 31, 2009) (explaining a "plaintiff's <u>pro se</u> status does not absolve him of the requirement of filing" a response under Local Rule 56.1), <u>aff'd</u> 385 F. App'x 83 (3d Cir. 2010). In Plaintiff's opposition to the instant Motion, however,

In September 2014, Plaintiff began working for Defendant, a tax, audit, and risk advisory service provider. Def. SOMF ¶¶ 1-2. He was hired to be a senior associate in KPMG's Lighthouse Operations Technology organization ("Lighthouse"). Id. ¶ 3. Lighthouse was a relatively new organization within KPMG and was created to perform research and development of technologies for business applications that could help KPMG better serve its clients. Id. ¶ 4; Declaration of Kevin Martelli ("Martelli Decl.") ¶ 4, ECF No. 69.4. As a senior associate, Plaintiff's main duty was to perform technical support for Lighthouse's data scientists. Chen Dep. Tr. 47:2-8, Peter Hughes Declaration ("Hughes Decl.") Ex. 15, ECF No. 69.8. Plaintiff was also a network administrator for two operating systems—Linux and Hadoop—which gave him "root access" and the ability to change any and all aspects of those operating systems. SOMF ¶¶ 11, 18.

In Fiscal Year ("FY") 2016, KPMG decided to put KTech, KPMG's central information technology ("IT") organization, in charge of all production system network administration. Id. ¶¶ 7, 20.[3] KTech agreed to allow only David Halik ("Halik"), another senior associate, to keep limited network administrator access to the production systems, and removed access from all other Lighthouse employees, including Plaintiff. Id. ¶¶ 21-25. Specifically, KTech refused to continue

---

Plaintiff states that Defendant "provided voluminous fabrications and willful dishonesties," Pl. Opp. at 2, and presents his own version of the events as they relate to his Title VII discrimination and retaliation claims, see Pl. Opp. at 9-19. The Court "often relax[es] procedural rules, including Local Civil Rule 56.1(a), for an unrepresented litigant." Shuman v. Sabol, No. 09-2490, 2011 WL 4343780, at *6 (D.N.J. Sept. 14, 2011). The Court will therefore draw the relevant facts from the Complaint, ECF No. 1, and Plaintiff's Opposition, ECF No. 79, both where supported by the record, as well as Defendant's Statement of Material Facts and Plaintiff's deposition. See Jordan v. Allgroup Wheaton, 218 F. Supp. 2d 643, 646 n.2 (D.N.J. 2002), aff'd 95 F. App'x 462 (3d Cir. 2004). The Defendant's Statement of Material Facts is treated as undisputed unless otherwise noted. See Caraballo v. Hershkowitz, No. 14-1094, 2016 WL 1365994, at *1 (D.N.J. Apr. 6, 2016).

[3] Lighthouse employees used both "production systems" and "development systems." SOMF ¶ 15. "Production systems" are those that KPMG employees use daily, "including [in performing] work for clients, running KPMG, and everything the Firm needs to operate." Id. ¶ 17. "Development systems" are those that Lighthouse staff use to perform "experimentation development, or testing," and "do[] not connect to any systems where people are performing actual work, storing critical data, or similar things for which people use IT systems in the business setting." Id. ¶ 16. Lighthouse employees, Chen included, continued to have network administrator access to development systems. Id. ¶ 32.

to give Plaintiff production system network administrative access because there had been several instances where Plaintiff made administrative changes without giving prior notice that had resulted in significant loss of data and service interruptions to KPMG employees. Id. ¶¶ 26-27, 30; see also Chen Dep. 55:18-25, 72:14-20, 75:2-16 (admitting that he made administrative changes, but explaining it was his view that he could make these changes whenever he wanted without prior permission or notice to others using the systems).

After initially removing Plaintiff's production system network administrative access, KTech discovered that Plaintiff still retained access to four servers and removed his access to these servers as well. SOMF ¶ 38. Plaintiff complained to his supervisor, Kevin Martelli ("Martelli"). Id. ¶ 39. Martelli asked Justin Zimmerman, KTech's Linux administrator, to restore Plaintiff's access, but Zimmerman refused. Id. ¶ 40; Chen Dep. 82:16-21. According to Plaintiff, he believed that KTech was limiting Lighthouse employees' network administrative access because KTech and Lighthouse were competing to have access to the Linux and Hadoop servers. See Chen Dep. 40:1-4, 83:25-84:6; SOMF ¶¶ 19, 42.

At the end of FY 2016, Plaintiff met with his Performance Management Leader Martin Kaestner ("Kaestner"), who issued Plaintiff a "Low Performance Discussion Memo," citing Plaintiff's inability to work in a team and failure to communicate, among other problems. Hughes Decl. Ex. C ("Performance Memo"), ECF No. 69.8. In reaching this conclusion, Kaestner received input from several individuals who worked with Plaintiff. SOMF ¶ 45. Because Plaintiff received a poor performance review, he was not eligible for a promotion in the next fiscal year. Id. ¶ 47. Following this performance review, Plaintiff became hostile towards William Koch ("Koch"),

3

Lighthouse's Associate Director. Id. ¶ 48.[4] For example, Plaintiff admits that he would stand in Koch's workspace and complain that Koch was ruining his career by preventing him from getting his network administrator access back. Id.; see also Chen Dep. 233-34. Koch eventually emailed Kaestner and Martelli about the issues he was experiencing with Plaintiff. SOMF ¶ 52. Kaestner addressed these complaints with Plaintiff. Id. ¶¶ 53-54.

In FY 2017, Martelli obtained funding for Plaintiff to pursue a project involving graphic processing units for artificial intelligence (the "GPU Project"). Id. ¶ 55. The GPU Project, however, moved much slower than Martelli expected, and eventually Martelli directed Koch and Halik to assist Plaintiff with the project. Id. ¶¶ 59-62. Plaintiff refused to take direction from Koch and impeded Halik's ability to gain access to the GPU Project, and ultimately Martelli removed Plaintiff's access to the project. Id. ¶¶ 63-64. When Halik was eventually able to gain access to the GPU Project, he discovered several problems with the project that further delayed its implementation. Id. ¶ 66. Upon his removal from the GPU Project, Plaintiff again began to harass Koch and Halik. Id. ¶¶ 67-71; see also Hughes Decl. Ex. 5 (letter from Koch to Martelli complaining of Plaintiff's conduct), Ex. 11 (letter from Halik to Martelli and Kaestner detailing Plaintiff's inappropriate conduct), ECF No. 69.8. Ultimately, based on these letters and in consultation with Simon Phillips ("Phillips") in KPMG's Human Resources department, Plaintiff was fired on October 5, 2017. SOMF ¶¶ 72-74. In his deposition, Plaintiff stated that he believed he was fired because Koch and Martelli wanted to take credit for GPU Project. See Chen Dep. 288:8-289:13, 293:6-13.

---

[4] In Plaintiff's opposition to the instant Motion, he states, without any support, that Koch used to be Plaintiff's Performance Management Leader but was removed from that position due to "inaction & incompetence." Pl. Opp. at 9. The truth of this statement is not material to the Motion, so the Court accepts Plaintiff's statement as true.

Several months after he was terminated, Plaintiff filed an internal complaint with KPMG's Ethics & Compliance Group. Hughes Decl. Ex. 14 ("E&C Complaint"), ECF No. 69.8. In this complaint, Plaintiff alleged that Koch provided misleading information to management that resulted in Plaintiff's termination and that Koch tried to take success for Plaintiff's work product. E&C Complaint at 1. Plaintiff did not allege discrimination or retaliation on the basis of his race or national origin anywhere in the E&C Complaint.

Plaintiff filed a pro se complaint on August 8, 2018 against KPMG, Koch, Halik, and Phillips, alleging wrongful termination, retaliation, and discrimination on the basis of his race and national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). See generally Compl., ECF No. 1. The Court dismissed the claims against the individual Plaintiffs on May 6, 2019. ECF No. 35. KPMG filed the instant Motion on May 15, 2020, ECF No. 69, which Plaintiff opposes, ECF No. 79.

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), the Court will grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with available affidavits, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Summary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988).

The Court construes all facts and inferences in the light most favorable to the non-moving party. Peters v. Del. River Port Auth., 16 F.3d 1346, 1349 (3d Cir. 1994). "[A] party opposing a

properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 US at 248 (citing First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)) (internal quotation marks omitted). Although the Court liberally construes a pro se plaintiff's Complaint and affords the litigant "leeway" in following the "technical rules," the same summary judgment standard applies. Wells Fargo Equip. Fin., Inc. v. Inchon LLC, No. 05-5559, 2007 WL 2688914, at *2 (D.N.J. Sept. 11, 2007) (internal quotation marks and citations omitted); see also Abdul-Aziz v. Lanigan, No. 17-2806, 2020 WL 3287229, at *6 (D.N.J. June 18, 2020).

### III. ANALYSIS

#### A. Title VII Discrimination Claims

Defendant argues it is entitled to summary judgment because Plaintiff has not met his burden of proving that he was discriminated against because of his race or national origin. The Court agrees.

"A Title VII plaintiff may state a claim for discrimination under either the pretext theory set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), or the mixed-motive theory set forth in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989)." Makky v. Chertoff, 541 F.3d 205, 213 (3d Cir. 2008). Under the McDonnell Douglas burden-shifting framework, the plaintiff must first establish a prima facie case of discrimination "by showing that: (1) s/he is a member of a protected class; (2) s/he was qualified for the position s/he sought to attain or retain; (3) s/he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." Id. at 214 (citations omitted). If those elements are met, "then an inference of discriminatory motive arises and the burden shifts to the

defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action." Id. (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993)). "If the defendant does so, . . . the burden shifts back to the plaintiff to show that the defendant's proffered reason is merely pretext for intentional discrimination." Id. (citation omitted). Under the Price Waterhouse mixed-motive framework, "a plaintiff need only present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that 'race, color, religion, sex, or national origin was a motivating factor for any employment practice.'" Id. (quoting Desert Palace, Inc. v. Costa, 539 U.S. 90, 101 (2003)).

Here, Plaintiff fails to state a claim for discrimination because he has failed to provide evidence that he experienced discrimination on the basis of his race or national origin. In both his deposition and the E&C Complaint, Plaintiff explains that he believes he was given a poor performance review and eventually terminated because Koch was trying to take credit for his work on the GPU Project. See E&C Complaint at 2; Chen Dep. 293:6-13. Plaintiff makes no mention of discrimination in proffering explanations for why he was not promoted and eventually terminated. In fact, in his Opposition, Plaintiff continues to emphasize that he was terminated because Koch "wanted to take full credit" for the GPU Project. See Pl. Opp. at 1-2 ("[There were n]o legitimate reasons [for] firing plaintiff. . . . Instead, solid evidence shows that it is because the [GPU] project demonstrated huge value (billion dollars annual revenue), [Koch] wanted to take full credit by a shady reallocation to his direct report, [and] . . . abused his administrative power . . . to achieve this with torture and slavery.").

In his Complaint and Opposition, however, Plaintiff cites instances of race- and national origin-based discrimination associated with promotions and terminations at KPMG. See Compl.

7

Ex. at 2, ECF No. 1.1[5] (explaining that only Caucasian staff members were promoted and that all three non-Caucasian members of Lighthouse's "beginners" were either fired or not promoted); Pl. Opp. at 21-22 (listing non-Caucasian individuals who were fired from KPMG).  Where, as here, a plaintiff seeks to prove an inference of intentional discrimination—the fourth factor of the McDonnell Douglas prima facie case—through "comparator evidence," to survive summary judgment he "must submit evidence that [he] is 'similarly situated' to [his] comparators and that these employees have been treated differently or favorably by their employer."  Baldwin v. Gramiccioni, No. 16-1675, 2019 WL 2281580, at *8 (D.N.J. May 29, 2019) (citing Williams v. Morton, 343 F.3d 212, 221 (3d Cir. 2003)).  "Similarly situated" means "similar in all relevant respects," including "the requirements, duties and responsibilities of the respective jobs" and "the conduct (or misconduct) in which each employee engaged."  Id. (internal quotation marks and citations omitted).

Here, Plaintiff has not met this burden.  In both his Complaint and Opposition, Plaintiff cites specifically to the experiences of Pauline Barnes and Shabbar Alidina.  Compl. Ex. at 2; Pl. Opp. at 21.  According to Plaintiff, Pauline Barnes, an African American woman who worked at Lighthouse and KTech, was fired in February 2016.  Pl. Opp. at 21.  Shabbar Alidina, an African American man who worked at KTech, received "several empty promises from both KTech and Lighthouse," Pl. Opp. at 21, and was not promoted for three and a half years while other Caucasian staff was promoted, Compl. Ex. at 2.  Plaintiff provides no evidence that either Pauline Barnes or Shabbar Alidina held similar positions to Plaintiff's or engaged in similar conduct as Plaintiff.[6]

---

[5] The Court refers to the page numbering on the electronic PDF filing of the exhibit to the Complaint.

[6] Plaintiff makes other empty allegations as well.  For example, he identifies an individual named "Lakshmi," an Indian woman, who had "serious confrontations" with Halik and Koch, and eventually left the group.  He also states that Debajyoti Roy, an Indian man, left KPMG because "the environment was super political."  Pl. Opp. at 21.  Plaintiff failed to submit any evidence that these employees are "similar in all relevant respects."  Baldwin, 2019 WL 2281580,

Ultimately, Plaintiff has not met "his burden of providing some affirmative evidence, i.e. not just mere allegations, to establish a prima facie case." See Cordero v. Warren, No. 12-2136, 2018 WL 3756447, at *2 (D.N.J. Aug. 8, 2018) (citing Barnett v. N.J. Transit Corp., 573 F. App'x 239, 243 (3d Cir. 2014)) (applying this burden to pro se plaintiff). Accordingly, Defendant is entitled to summary judgment on Plaintiff's Title VII discrimination claims.[7]

### B. Title VII Retaliation Claims

Plaintiff also advances retaliation claims under Title VII. Defendant argues it is entitled to summary judgment because Plaintiff has not established a prima facie case of Title VII retaliation. The Court agrees.

To establish a prima facie case of retaliation under Title VII, a plaintiff must show "(1) [that he engaged in] protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." Daniel v. Sch. Dist. of Phila., 776 F.3d 181, 193 (3d Cir. 2015) (internal quotation marks and citation omitted). "For the purposes of the first prong . . . protected opposition activity includes not only an employee's filing of formal charges of discrimination against an employer but also informal protests of

---

at *8. Moreover, Plaintiff undermines his own argument by introducing evidence that Darryl Swofford, a white employee, was also treated poorly by KPMG. Pl. Opp. at 21-22.

[7] Even assuming Plaintiff demonstrated a prima facie case of discrimination, Defendant has proffered a "legitimate, non-discriminatory reason" for not promoting him and eventually terminating him. See Makky, 541 F.3d at 214. It is KPMG policy that individuals who receive poor performance reviews do not receive a promotion, SOMF ¶ 47, and Defendant contends that it eventually fired Plaintiff because he created a hostile work environment by harassing Koch and Halik, SOMF ¶¶ 67-71. In response, Plaintiff has not pointed to any evidence that these legitimate grounds for termination were "merely pretext" for discrimination. See Makky, 541 F.3d at 214; Carter v. N.J. Dep't of Human Servs., No. 18-12469, 2020 WL 3427986, at *7 (D.N.J. June 23, 2020) ("Even if Plaintiff establishes a prima facie case . . . [his] claim fails because he does not present any evidence that Defendant['s] reasons for its actions are merely a pretext for discrimination.") (internal quotation marks and citation omitted).

discriminatory employment practices, including making complaints to management." Id. (internal quotation marks and citation omitted).

Here, Plaintiff has failed to show that he was retaliated against for reporting discriminatory employment practices. In both his Complaint and Opposition to the instant Motion, Plaintiff alleges that Koch retaliated against him by giving "malicious feedback" that led to a poor performance review after Koch was removed from his role as Plaintiff's management leader. Compl. Ex. at 3; see also Pl. Opp. at 9-16 (additionally alleging that Plaintiff was harassed by Koch, who wanted to take credit for Plaintiff's success on his GPU Project). Such retaliation, even if it occurred, is not retaliation for any protected action taken by Plaintiff. In fact, Plaintiff neither alleges nor points to any record evidence that he filed a formal complaint or otherwise complained to management about discrimination on behalf of his race or national origin. Plaintiff therefore cannot establish a prima face case of retaliation, and Defendant is entitled to summary judgment. See, e.g., Hoist v. New Jersey, No. 12-5370, 2015 WL 4773275, at *21 (D.N.J. Aug. 13, 2015) (granting summary judgment to defendant on retaliation claim because "[a]fter reviewing the record, the Court c[ould] not find a single complaint Plaintiff made—whether informal or formal—concerning an employment practice that she found to be discriminatory towards her because of her race").

**IV.   CONCLUSION**

For the reasons set forth herein, Defendant's Motion for Summary Judgment, ECF No. 69, is **GRANTED**. This matter is now **CLOSED**. An appropriate Order follows.

Dated: November 24, 2020

> */s Madeline Cox Arleo*
> **MADELINE COX ARLEO**
> **UNITED STATES DISTRICT JUDGE**

10